UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IDEAVILLAGE PRODUCTS CORP. and
IDVC, LLC,

                              Plaintiffs,

                  -v.-

COPPER COMPRESSION BRANDS LLC and
COPPER COMPRESSION LLC,

                              Defendants.

20 Civ. 4604 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Ideavillage Products Corp. and IDVC, LLC (collectively,
"Ideavillage" or "Plaintiffs") bring this action against Copper Compression
Brands LLC and Copper Compression LLC (collectively, "Copper Compression"
or "Defendants"), asserting claims of trademark infringement and false
designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114,
1125(a), related to Ideavillage's "Copper Fit" line of copper-infused compression
garments.  Now before the Court is Plaintiffs' motion for leave to amend their
pleadings to bring an additional claim against Defendants for false advertising
under the Lanham Act, 15 U.S.C. § 1125(a).  For the reasons that follow, the
Court grants Plaintiffs' motion.

## BACKGROUND[1]

Plaintiffs are affiliated companies that promote and sell various products
through national direct response television advertising, a marketing strategy

---

[1]    The facts recounted herein are drawn primarily from Plaintiffs' First Amended
       Complaint ("Am. Compl." (Dkt. #17)), which is currently the operative pleading in this
       matter, as well as the exhibits attached thereto ("Pl. Ex. [ ]").  The Court draws

colloquially known as "As Seen on TV."  (Am. Compl. ¶ 11).  In addition to television, Plaintiffs market and sell their products at the retail level, online — including on Ideavillage's own website and on Amazon — through catalog companies, and through a network of international distributors.  (*Id.*).  One of Plaintiffs' most popular products is a line of copper-infused compression clothing, marketed under the trademark "Copper Fit," which products are designed to alleviate muscle and joint soreness and pain.  (*Id.* at ¶ 13). Plaintiffs own and possess exclusive licensing rights to several federal trademark registrations for their Copper Fit brand.  (*Id.* at ¶ 17; *see also* Pl. Ex. A).

Defendants are affiliated companies that market and sell copper-infused compression products online, including on Copper Compression's own website and through an Amazon virtual storefront.  (Am. Compl. ¶¶ 10, 29).  Plaintiffs allege that Defendants advertise and sell competing products that are so similar to Copper Fit products as to be misleading, thus infringing upon Ideavillage's Copper Fit trademarks.  (*See id.* at ¶¶ 28-30).  As examples of Defendants' allegedly infringing conduct, Plaintiffs claim that Defendants

---

additional facts from the declarations submitted by the parties in support of their respective positions on Plaintiffs' motion to amend.

For ease of reference, the Court refers to Plaintiffs' Memorandum of Law in support of their motion for leave to file an amended complaint as "Pl. Br." (Dkt. #57); to the Declaration of Kerry B. Brownlee as "Brownlee Decl." (Dkt. #58); and to the Declaration of Eric Langberg as "Langberg Decl." (Dkt. #59), both of which declarations are attached thereto.  The Court will refer to Defendants' Memorandum of Law in opposition to Plaintiffs' motion to amend as "Def. Opp." (Dkt. #60); and to the Declaration of Lee Goldberg, attached thereto, as "Goldberg Decl." (Dkt. #61).  The Court will refer to Plaintiffs' Reply Memorandum of Law as "Pl. Reply" (Dkt. #62).

advertise their products using the term "copper" in close proximity to the term "fit" (*id.* at ¶¶ 30, 32), and have deliberately caused searches for Copper Fit products to yield results for Defendants' products (*see id.* at ¶¶ 33-37).  As a result of Defendants' infringing conduct, customers seeking to purchase Plaintiffs' Copper Fit products have allegedly been deceived into purchasing Defendants' Copper Compression products.  (*Id.* at ¶¶ 40-41).

Plaintiffs commenced this action on June 16, 2020, with the filing of a Complaint that included claims of trademark infringement and false designation of origin under the Lanham Act.  (Dkt. #1).  On July 9, 2020, Plaintiffs filed their First Amended Complaint, which added IDVC, LLC as a party to this action.  (Dkt. #17).  Following unsuccessful settlement discussions (*see* Dkt. #40), the Court entered a Civil Case Management Plan and Scheduling Order (the "Scheduling Order") on December 15, 2020, that set a deadline for amended pleadings of January 14, 2021, as well as cutoffs for fact and expert discovery (Dkt. #43).  The Court subsequently granted three requests from the parties to extend the deadlines for fact and expert discovery, while leaving unchanged the deadline for amended pleadings.  (*See* Dkt. #47, 55, 64).  The deadlines for fact and expert discovery in this case are currently set for November 8, 2021, and January 10, 2022, respectively.  (Dkt. #64).

On May 17, 2021, approximately four months past the deadline to amend as outlined in the Scheduling Order, Plaintiffs filed a motion for leave to

file a Second Amended Complaint.  (Dkt. #50-52).[2]  With this amendment,

Plaintiffs seek to add to their pleadings a false advertising claim against

Defendants in connection with certain statements and representations on

Defendants' website related to the promotion and sale of their Copper

Compression products.  (*See* Brownlee Decl., Ex. A ("Proposed Second

Amended Complaint" or "Proposed SAC"), at ¶¶ 41-42, 66-77).  Defendants

filed their opposition to Plaintiffs' motion to amend on June 11, 2021 (Dkt.

#60-61), and Plaintiffs filed their reply on June 24, 2021 (Dkt. #62).

## DISCUSSION

### A.     Applicable Law

If a party is not entitled to amendment as a matter of course, Rule 15 of

the Federal Rules of Civil Procedure provides that a party may generally

"amend its pleading only with the opposing party's written consent or the

court's leave," but that the "court should freely give leave when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  That said, district courts have "the

discretion to deny leave if there [is] a good reason for it, such as futility, bad

faith, undue delay, or undue prejudice to the opposing party."  *In re Arab Bank,*

*PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir. 2015) (quoting *Jin* v.

*Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)), *as amended* (Dec. 17,

2015).  "An amendment to a pleading is futile if the proposed claim could not

---

[2]      Due to a docketing error, Plaintiffs refiled their motion to amend and supporting papers
on June 8, 2021.  (Dkt. #56-59).

withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente* v. *Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).

When there is a scheduling order in effect — as there is in this case (Dkt. #43) — deadlines for amendment of pleadings "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  When a plaintiff seeks leave to amend pleadings after the expiration of the period set forth in a scheduling order, "the lenient standard under Rule 15(a) … must be balanced against the [good cause] requirement under Rule 16(b)[.]" *Holmes* v. *Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) (quoting *Grochowski* v. *Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)); *accord Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  The "primary consideration" in determining whether good cause exists "is whether the moving party can demonstrate diligence." *Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  "Good cause is demonstrated by a showing that despite its having exercised diligence, the applicable deadline could not have been reasonably met by the [moving party]." *Soroof Trading Dev. Co., Ltd.* v. *GE Microgen, Inc.,* 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  The standard is typically not met "when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Perfect Pearl Co., Inc.* v. *Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  But diligence is not the only consideration, as the Court "also may consider other relevant factors, including, in particular, whether allowing the

5

amendment of the pleading at this stage of the litigation will prejudice [non-movants]." *Kassner*, 496 F.3d at 244.

**B.    The Court Grants Plaintiffs' Motion to Amend**

Plaintiffs seek leave to amend their pleadings to include allegations of misrepresentations giving rise to an additional claim of false advertising. Defendants oppose this amendment on the grounds that (i) Plaintiffs have exhibited a lack of diligence and (ii) the proposed amendment is prejudicial and futile. The Court agrees with Plaintiffs and finds that they have demonstrated good cause under Rule 16 and that their proposed amendment is neither futile nor unduly prejudicial to Defendants.

**1.    Diligence**

Plaintiffs explain that their desire to amend their pleadings a second time stems from the recent revelation that certain representations on Defendants' website and elsewhere about their Copper Compression products are allegedly false or misleading. (Pl. Br. 2; *see also* Langberg Decl. ¶¶ 3-7). In brief, Plaintiffs initiated a test buy of certain of Defendants' Copper Compression products "[i]n or about late January 2021," and performed tests on samples of these products. (Langberg Decl. ¶¶ 3-5). Plaintiffs claim that the results of this testing confirm the misleading and/or false nature of Defendants' representations that Copper Compression products have the "highest copper content, [g]uaranteed" and that their products are constructed with "85% copper-infused nylon[.]" (Proposed SAC ¶¶ 41-42). Plaintiffs contend that the original deadline to amend set by the Scheduling Order "could not have been

reasonably met," *Soroof Trading Dev. Co., Ltd.,* 283 F.R.D. at 147, because Plaintiffs were unaware of sufficient factual support to plead a bona fide claim for false advertising prior to receiving the results of the product tests, nor was support for this claim publicly available.  (Pl. Br. 4).

Defendants dispute that Plaintiffs have demonstrated good cause to seek this amendment because it was only after the passage of the applicable deadline that Plaintiffs even began to investigate their false advertising claim. (Def. Opp. 4).  Defendants further argue against a finding of good cause because Plaintiffs have allegedly known since the beginning of the case about the potential false advertising claim, yet failed to pursue it until after the deadline to amend the pleadings.  (*See id.* at 3, 10-11).

While the Court agrees with Defendants that Plaintiffs likely could have initiated test buys of and performed tests on Defendants' publicly available compression products earlier (Def. Opp. 3), Plaintiffs have nevertheless presented acceptable justification for their delay.  Plaintiffs represent that despite their general awareness at the inception of the case of Defendants' statements that now form the basis of their proposed false advertising claim, it was only through discovery that they "recently [became] aware of the extent to which Defendants prominently, and repeatedly use these claims in connection with" their advertising.  (Pl. Br. 2 n.2).  In other words, materials produced by Defendants in discovery provided the impetus for Plaintiffs' investigation into Defendants' advertising (Pl. Reply 2), which is a basis that courts in this District have previously found to support good cause.  *See, e.g., Cardwell* v.

7

*Davis Polk & Wardwell LLP*, No. 19 Civ. 10256 (GHW), 2021 WL 4434935, at *40 (S.D.N.Y. Sept. 23, 2021) (collecting cases for the proposition that "[f]acts learned during discovery that a plaintiff could not reasonably have known prior to the deadline to amend can demonstrate diligence").

While Plaintiffs have not convinced the Court that they were wholly unable to investigate the veracity of Defendants' marketing statements sooner, the Court does not believe that Plaintiffs were dilatory once they became aware of facts supporting their proposed false advertising claim. (*See* Pl. Br. 4; Langberg Decl. ¶¶ 3-7). Plaintiffs initiated test buys of Defendants' products in or about late January 2021, received Defendants' products in or about mid-February 2021, and received preliminary testing results in or about mid-April 2021. (Langberg Decl. ¶¶ 3-4). It was only then that Plaintiffs claim to have learned of a viable false advertising claim, as this testing data purportedly contradicted Defendants' advertising claims by revealing that some of Defendants' products contained less copper content than Plaintiffs' and that not all of Defendants' products contained 85% copper. (*Id.* at ¶¶ 6-7). Within a matter of weeks, on May 7, 2021, Plaintiffs informed Defendants of their intent to interpose a claim of false advertising. (*See* Goldberg Decl., Ex. 1). Thereafter, on May 17, 2021, Plaintiffs noticed the instant motion to amend. (Dkt. #50). At this relatively early stage in the proceedings, with fact discovery still open and prior to any dispositive motion practice, the Court does not find that Plaintiffs' failure to investigate Defendants' advertising claims at an earlier time, when it had no basis to suspect their falsity, constitutes a lack of

8

diligence that would negate a showing of good cause.  Instead, Plaintiffs appear to have diligently pursued this amendment upon obtaining information that suggested the viability of their proposed false advertising claim.

Defendants further argue that because Plaintiffs have known since the onset of the case about the promotional statements that form the basis of the proposed amendment, Plaintiffs are unable to satisfy their burden of showing good cause.  (Def. Opp. 1-2).  The Court disagrees, as it finds no reason to conflate Plaintiffs' knowledge of certain of Defendants' advertising with knowledge of the existence of a viable claim for false advertising.  To the contrary, Plaintiffs have explained, "only recently, through discovery, did [they] become aware of the pervasive manner in which Defendants have made such statements" and that "when [they] filed the Instant Action, and their [First Amended Complaint], as well as when the deadline to amend passed (*i.e.*, January 14, 2021), they were not aware of the basis for their false advertising claim that they seek to add." (Pl. Reply 2).  That Plaintiffs support their proposed amendment with advertisements that have been on Defendants' website since the inception of this case does not defeat a finding of good cause, because "[a party] need not prove that they uncovered new facts or law in order for this Court to grant leave to amend." *Affiliated FM Ins. Co.* v. *Liberty Mech. Contractors, Inc.*, No. 12 Civ. 5160 (KPF), 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013).

Moreover, the cases cited by Defendants where courts have found good cause to be lacking do not compel a contrary conclusion, as all involve either

substantially longer delays or amendments proposed at materially later stages in the proceedings. (*See* Def. Opp. 10-11; Pl. Reply 2 n.4).  For instance, *King-Devick Test Inc.* v. *NYU Langone Hospitals* dealt with a plaintiff's request to amend the pleadings more than eight months past the deadline set by the applicable scheduling order, after the close of fact discovery, and seeking to add a theory of liability that Plaintiffs were aware of for several years.  *See* No. 17 Civ. 9307 (JPO), 2019 WL 3071935, at *2-5 (S.D.N.Y. July 15, 2019).  In *Grochowski* v. *Phoenix Construction,* the Second Circuit affirmed a district court's denial of leave to amend their pleadings when plaintiffs had delayed their motion for over a year, until after discovery had been completed, and while a summary judgment motion was pending.  318 F.3d at 86.  And in *Decastro* v. *City of New York*, the court denied plaintiffs' leave to amend when their motion came three years after the completion of discovery, more than two years after a summary judgment decision, and mere weeks before pre-trial motions were due.  No. 16 Civ. 3850 (RA), 2020 WL 4932778, at *10 (S.D.N.Y. Aug. 24, 2020).  The case at bar is easily distinguishable, as discovery has not yet closed, depositions have not yet taken place, there has been no dispositive motion practice, and the motion comes close to four months after the deadline set by the Scheduling Order.

### 2.    Prejudice

In any event, permitting the proposed amendment would not be prejudicial in any legally relevant respect.  In assessing whether to permit a belated amendment under Rule 16, a district court may consider "whether

10

allowing the amendment of the pleadings at this stage of the litigation will prejudice" the nonmoving party.  *Kassner*, 496 F.3d at 244.  Indeed, where the amendment is not prejudicial, "district courts in this Circuit have held they have 'discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments in a Rule 16 scheduling order.'"  *Suarez* v. *Cal. Nat. Living, Inc.*, No. 17 Civ. 9847 (VB), 2019 WL 5188952, at *2 (S.D.N.Y. Oct. 15, 2019) (quoting *Olaf Sööt Design, LLC* v. *Daktronics, Inc.*, 299 F. Supp. 3d 395, 397 (S.D.N.Y. 2017)).

In determining what constitutes prejudice, a court considers whether the inclusion of the new claim would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted).  "But mere allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'"  *Cardwell*, 2021 WL 4434935, at *41 (internal quotation marks and alteration omitted) (quoting *A.V. by Versace, Inc.* v. *Gianni Versace*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)).

Plaintiffs' amendment will not result in any of the consequences contemplated by the prejudice factors articulated in *Block*.  *First,* Plaintiffs' proposed amendment would not require Defendants to expend significant additional resources to conduct discovery and prepare for trial.  While Plaintiffs' amendment stands to expand the scope of discovery to some extent,

11

the Court does not perceive the inclusion of the proposed false advertising claim to alter "the focus of the entire case," *Presbyterian Church of Sudan* v. *Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009) (citation omitted), or entail significant additional expenditure by Defendants, as the amendment relates to precisely the same products implicated by Plaintiffs' preexisting Lanham Act claims.  Furthermore, Defendants have already conducted testing designed to refute Plaintiffs' allegations of false advertising — an expenditure made prior to the formal institution of a false advertising claim against Defendants.  (*See* Goldberg Decl., Ex. 2; *see also* Def. Opp. 15).  The recency of these tests, conducted in June 2021 (Goldberg Decl., Ex. 2), suggests that Defendants have already prepared and possess materials relevant to Plaintiffs' proposed false advertising claim, thus lessening any potential prejudice to Defendants stemming from Plaintiffs' amendment.

*Second,* as discovery is ongoing and ample time remains before trial, allowing the amendment would not significantly delay the resolution of the dispute.  *See Affiliated FM Ins. Co.*, 2013 WL 4526246, at *7.  At this juncture, the parties have exchanged documents, but they "have neither taken nor scheduled any depositions, … they have not made motions for summary judgment, and there is no trial date set." (Brownlee Decl. ¶¶ 2-3).  *Hadassah* v. *Hadassah Acad. Coll.*, No. 19 Civ. 8953 (JPO), 2021 WL 4459121, at *4 (S.D.N.Y. Sept. 29, 2021) (allowing amendment where inclusion would not require expenditure of significant additional resources, cause delay, or alter "the focus of the entire case" (internal quotation marks and citation omitted)).

12

Importantly, this is not a case where Plaintiffs seek to spring, at the eleventh hour, an amendment that would substantially interrupt the course of the proceedings or thwart the prior efforts of the parties. *Third,* and finally, the Court is not aware of any other litigation that would be impacted if Plaintiffs' amendment were allowed.

Arguing on a different plane, Defendants contend that Plaintiffs' amendment would result in prejudice for several additional reasons not encompassed by the *Block* factors. *First,* Defendants claim prejudice because Plaintiffs' amendment contains baseless, speculative allegations (Def. Opp. 14), but the Court views this argument as properly going to the issue of futility, discussed *infra*, rather than prejudice. *Second,* Defendants assert that the amendment is based on statements that Plaintiffs were aware of since the inception of the case. (*Id.* at 15). This fails, because it merely recasts under the guise of prejudice Defendants' argument — already rejected by the Court — related to Plaintiffs' purported lack of diligence. *Third*, Defendants argue that the amendment threatens to annul the parties' efforts expended during the months of written discovery and document production that have taken place. (*Id.*). The Court fails to see how granting Plaintiffs' motion would nullify the parties' prior discovery efforts when Plaintiffs' Lanham Act claims will remain live (thus ensuring the continued relevance of the previously exchanged discovery), regardless of the disposition of this motion. *Lastly,* Defendants claim that permitting amendment would disrupt Defendants' plan to move to dismiss the currently operative complaint. (*Id.* at 6-7, 15). This argument is

13

unavailing, as the Court will not predicate its ruling on the instant motion on either Defendants' as-yet-unfiled motion to dismiss or Defendants' frustration with an unexpected alteration of their litigation strategy.  At this stage in the case, such matters do not constitute prejudice, and Defendants retain their rights to present all arguments on an eventual motion to dismiss Plaintiffs' Second Amended Complaint.

Accordingly under these circumstances, the Court finds that Plaintiffs' amendment would not result in prejudice to Defendants.

### 3.     Futility

Defendants assert that leave to amend should be denied for the additional reason that Plaintiffs' proposed amendment is futile.  (Def. Opp. 4-5, 12-14).  The Court disagrees.

As previously stated, a proposed amendment is futile if "the proposed amended complaint would fail to state a claim on which relief could be granted."  *Perfect Pearl Co.*, 889 F. Supp. 2d at 459 (citation omitted).  Whether the proposed amended pleadings are sufficient is determined by the facts alleged in the proposed amended complaint itself.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  A complaint need not contain detailed factual allegations, but mere "'labels and conclusions' or 'a formulaic recitation of the elements of a

14

cause of action will not do.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).  In order to

survive a motion to dismiss a Lanham Act false advertising claim, a plaintiff

must adequately allege that the challenged misrepresentations are (i) "either

literally or impliedly false"; (ii) "material"; (iii) "placed in interstate commerce";

and (iv) "the cause of actual or likely injury to the plaintiff."  *See Church &*

*Dwight Co., Inc.* v. *SPD Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 65 (2d

Cir. 2016) (citing *Merck Eprova AG* v. *Gnosis S.p.A.*, 760 F.3d 247, 255-56 (2d

Cir. 2014)).

The Court finds that Plaintiffs' amendment satisfies the standard to

plead a false advertising claim under the Lanham Act.  Plaintiffs specify at least

two allegedly deceptive statements made by Defendants: (i) that their products

"contain the highest amount of copper," and (ii) "that all of Defendants'

Products are made with 85% copper-infused nylon."  (Proposed SAC ¶ 69).

Furthermore, Plaintiffs assert that these statements "misrepresent core

characteristics of qualities of Defendants' products" (*id.*), and "are material and

likely to influence, and have influenced, the relevant consumers' purchasing

decision(s)" (*id.* at ¶ 71).  Plaintiffs also allege that Defendants' claims are

disseminated throughout the United States via Defendants' website and other

marketing materials.  (*Id.* at ¶ 72).  And injury to Plaintiffs flows from

Defendants' allegedly misleading statements because Defendants "have

deliberately intended to induce, and have induced, customers to purchase

Defendants' Products instead of competing products, including Plaintiffs'

Copper Fit Products, thereby unfairly diverting sales away from Plaintiffs." (*Id.* at ¶ 73). These allegations taken together satisfy the pleading standard as set forth in *Iqbal*.

In arguing the futility of Plaintiffs' amendment, Defendants take aim at Plaintiffs' proffered support for their additional claim of false advertising. For instance, Defendants note that Plaintiffs sent samples of Defendants' products to "a reputable Nationally Recognized Testing Laboratory" (Langberg Decl. ¶ 4), yet have failed to specify which laboratory Plaintiffs utilized or to attach any test results to support their desired claim (Def. Opp. 4-5). Defendants further argue that Plaintiffs' tests results are merely "preliminary" and, to the extent the results of these tests can be gleaned on this record, appear to prove that some of Defendants' products in fact contain 85% copper, as advertised. (*Id.* at 5). To substantiate their defense, Defendants include recent testing results of their own and competitors' products performed by an independent third-party lab. (*Id.* at 5, 13; *see also* Goldberg Decl., Ex. 2-3). However, much of Defendants' futility argument is inappropriate for the Court to consider at the pleading stage, when the Court must take Plaintiffs' well-pleaded allegations as true and cannot rely on materials, such as Defendants' own testing, outside of and unrelated to the pleadings. *DiFolco*, 622 F.3d at 110-11. The Court expresses no opinion on the merits of Plaintiffs' false advertising claim, as the proper inquiry at this stage "is not whether a [moving party] will ultimately prevail but whether [that party] is entitled to offer evidence to support the claims." *Todd* v. *Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001). The Court

answers this question in the affirmative and finds Plaintiffs' amendment not to be futile.[3]

## CONCLUSION

For the forgoing reasons, Plaintiffs' motion to amend is GRANTED. Plaintiffs shall file their Second Amended Complaint, which will be the operative pleading in this matter, within one week of the date of this Opinion. To accommodate this ruling, the Court hereby grants a final extension of discovery in this case. Accordingly, fact discovery shall be completed on or before **December 29, 2021**, and expert discovery shall be completed on or before **February 24, 2022**. No further extensions will be granted. The next pretrial conference is scheduled for **January 14, 2022**, at **3:00 p.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007.

The Clerk of Court is directed to terminate the pending motion at docket entry 56.

SO ORDERED.

Dated:      October 27, 2021
            New York, New York

                                        _____
                                        KATHERINE POLK FAILLA
                                        United States District Judge

---

[3]     Defendants additionally argue that Plaintiffs' amendment should be denied because it does not relate back to the date of the original or first amended pleading pursuant to Rule 15(c)(2) of the Federal Rules of Civil Procedure. (Def. Opp. 8-9.) As noted by Plaintiff, Rule 15(c)'s relation back standard is generally invoked to circumvent a potentially applicable statute of limitations that would otherwise time bar claims contained in an amendment. (*See* Pl. Reply 9.) This is precisely the context of the cases cited by Defendants in support of their relation back argument. (*Id.*) The Court thus agrees with Plaintiffs and finds Rule 15(c) inapplicable to the instant motion.